HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v. E. E. AREY.

Decided March 9, 1898.

**1. Passenger Carrier—Signing and Stamping Return Ticket.**

A round trip ticket sold at a reduced rate and providing that it shall be good for return passage only when the holder identifies himself to and has it stamped by the agent of the carrier at his destination, will not entitle the purchaser to such passage when not so stamped, though he showed it to the agent and was told that it was all right, but did not request that it be stamped for return.

**2. Same—Peremptory Instruction.**

It being clear that plaintiff had no right to return passage upon his unstamped ticket, a peremptory instruction for defendant was called for; and a judgment in plaintiff's favor for damages for refusing his ticket and ejecting him from the train should be reversed on appeal and rendered for defendant.

APPEAL from McLennan.   Tried below before Hon. SAM. R. SCOTT.

*Baker, Botts, Baker & Lovett* and *Frank Andrews,* for appellant.

*Cunningham, Cunningham & McCollum,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit by appellee Arey against the railway company for damages alleged to have been sustained by reason of being removed from the appellant's train at Cypress Station, on the line of appellant's road.   Verdict and judgment was rendered in the court below in favor of appellee for $200.

The facts are as follows:   On or about the 24th of December, 1895, the plaintiff purchased a ticket at Waco, Texas, for Houston and return. This ticket, among other stipulations, provided, "that it is not good for return passage unless the holder identifies himself as the original purchaser to the satisfaction of the authorized agent of the Houston & Texas Central Railway, at point between punch marks, on or before date canceled in margin of this contract, and when officially signed and dated in ink, and duly stamped by said agent, this ticket shall then be good only one day after such date."

The ticket was sold at a much reduced rate.   The point between the punch marks, as indicating the place where the ticket should be officially signed and stamped by the agent, was Houston, Texas.   The appellant traveled to Houston upon this ticket, accompanied by his wife, for whom he had also purchased a similar ticket.

On December 29th he boarded the train at Houston to return to Waco, and after leaving Houston and before reaching Cypress the ticket

was presented to the conductor, who declined to honor it, stating as a reason therefor that it had not been properly officially signed and stamped by the agent at Houston. The appellee then stated to the conductor that he supposed the ticket was good, as he had been informed to that effect by the agent at Houston. But the conductor declined to give him transportation upon the ticket, and told him he must leave the train when it reached Cypress Station. The appellee declined to do so, and indicated by his conduct that he intended to remain on the train. The conductor, thereupon, when the train reached Cypress, removed the appellee therefrom, using no more force than was necessary to accomplish that purpose, which is a fact testified to by the appellee.

The ticket was not signed or stamped by the agent in Houston, as the stipulation required. Upon this point the appellee testified: "I went to the depot of the Houston & Texas Central Railway at Houston, about eleven minutes before train time, or four minutes past 11 o'clock. Phillip Skinner was with me at the time. When I bought the two tickets at Waco I signed them both E. E. Arey, supposing that my wife would come back with me. While I was in Houston I received a telegram from the Dennis Manufacturing Company, telling me to be in Waco on Monday, the 30th day of December. I remembered then that my wife's ticket was signed E. E. Arey, the same as mine, and I was afraid she would have some trouble with the ticket when she went to return, on account of it not stating whether it was Mr. or Mrs.; and when I went to the ticket office I explained the matter to the agent, and how it occurred, and asked him what I should do, or what my wife should do, in order to protect herself on the ticket. My wife was not with me at the depot, and she had her ticket with her at her friend's house. I told the agent that my wife was not going back with me to Waco, and asked him what I should do, or what she should do, so she wouldn't have any trouble with the ticket. The agent said to me, 'Tell your wife to present her ticket here, and mention this matter to us, and we will fix the ticket so that she will have no trouble.' I thanked him, and then took my ticket out of my pocket, unfolded it, and passed it through the little brass screen of the office window to the agent.. Prior to this, the agent said to me, 'When are you going back to Waco, Mr. Arey?' I told him I was going back on the next train. I then passed the ticket through the window to him. This is the same ticket. It was only partially unfolded. He finished opening it up, turned it over, looked at the ticket on both sides, returned the ticket to me and says, 'Your ticket is all right.' I took the ticket and put it in my pocket.

"I live in Waco. I have lived there about eighteen months. That was all he said about the ticket, and all that I said, and I took it and put it in my pocket. I was standing there looking in the window, saw him handling the ticket, and saw him hand it back to me, and I saw he did not stamp it, nor sign his name, nor do anything else to the ticket. It was then seven or eight minutes before the train left. I went out and got on the train, and when the conductor came through I offered him

the ticket.    He declined to accept it and said it was defective.    At that time, it was not signed by me on the back.    I had signed it on the face before leaving Waco.    It was neither signed, dated, nor stamped by the agent at Houston, and I knew all these facts at the time, and before I boarded the train."

He further testified that he did not offer to pay his fare to the conductor, and testified that he had no money to pay additional fare, and he declined to pay his fare.    He further stated that neither the conductor nor the agent at Houston asked him to sign the ticket, nor did they call upon him to identify himself.    After being put off at Cypress, he returned that night to Houston, and the next morning had his ticket properly signed and stamped by the agent there and returned to Waco upon it, as evidence of his right to transportation.

There is another stipulation upon the back of the ticket, immediately following the one quoted, to this effect: "That I, the original purchaser, whose description is recorded herein, hereby agree to sign my name, and otherwise identify myself as such, whenever called upon to do so by any conductor or agent on the line or lines over which this ticket reads; and on my failure or refusal to do so, this ticket shall become therefore void; that it may be taken up and full fare collected, if presented at any time by another person."

There are other facts in the record, but we have set out all of importance that bear upon the grounds upon which we dispose of the case.    It is not pretended but that the appellee knew of the stipulations requiring the ticket to be signed and stamped at Houston before it would be good for return passage, and it is undisputed that he did not request the agent to sign and stamp it; and he knew before he boarded the train that it had not been stamped and signed.    This was a valid stipulation, and it was a reasonable regulation that was proper to be imposed by the appellant, as one of the conditions of the appellee's right of transportation.    From the undisputed facts upon this point, it is clear that the negligence of the appellee and the want of the exercise of ordinary prudence in failing to request and have his ticket signed and stamped before leaving Houston was the cause of his being removed from the train; and as the facts show that the conductor in his conduct in this respect used no more force than necessary, this disposes of all grounds upon which the appellee, in any possible view of the case, could recover.    He can not claim that the agent was negligent in failing to stamp the ticket and sign it; because it is clear that he made no request that this should be done.

While it is true the agent, by the information received, may have supposed that the appellee was going to return to Waco on the next train, still the duty did not arise for him to voluntarily perform the service of signing and stamping the ticket, until a request had been made to that effect; for if the agent, without a request being made, had signed and stamped the ticket, and the appellee had changed his mind and concluded not to return to Waco on that day, and had postponed the return

trip until after the one day had expired from the time it should be stamped and signed in which the ticket was limited, he could not have been bound by the unauthorized signing and stamping of the ticket, and in such a case he could have will contended that the conduct of the agent in signing the ticket without his request was unauthorized and not binding upon him. The appellee knowing that this requirement was necessary, and knowing further that it had not been performed, ordinary prudence would have required of him a request that the agent sign and stamp the ticket, and thereby perform a duty which was incumbent upon him after request made, in order that the stipulation would be complied with.

This case, on its facts, is distinguishable from the case of Railway v. Martino, 2 Texas Civil Appeals, 634, and reaffirmed upon this point in 21 Southwestern Reporter, 781, and the case of Railway v. Holbrook, 33 Southwestern Reporter, and those there cited. These cases are to the effect that the wrong, mistake, or negligence of the ticket agent will not affect the passenger's right to transportation, and he can rely upon the real contract as made, and the failure of duty upon the part of the ticket agent in furnishing him the evidence of his right to transportation would not authorize the conductor, after receiving information of that fact, to expel him from the train.

In this case, the conclusion is irresistible that the expulsion of the appellee was owing to his own want of care and negligence; and this is a conclusion about which the minds of men of ordinary intelligence and prudence would not differ. Therefore, with this view of the case, the court below should have peremptorily instructed a verdict in favor of the appellant.

This being the case, it becomes unnecessary for us to pass upon other questions presented, as the result we reach is that the judgment below should be reversed, and judgment here rendered in favor of appellant.

*Reversed and rendered.*